# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
**No. 21-1839V**

| | |
|---|---|
| CORA OWENS,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br><br><br>Filed: April 14, 2026 |

*Jonathan Joseph Svitak, Shannon Law Group, P.C., Woodridge, IL, for Petitioner.*

*Lauren Kells, U.S. Department of Justice, Washington, DC, for Respondent.*

### FINDINGS OF FACT AND RULING ON ENTITLEMENT[1]

On September 10, 2021, Cora Owens filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") following an influenza vaccine she received on October 19, 2020. Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

For the reasons set forth below, I find that Petitioner has provided preponderant evidence that her pain likely began within 48 hours of her vaccination, that her range of

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

motion was limited, and that she has satisfied all of the requirements of a Table SIRVA claim. Therefore, Petitioner is entitled to compensation under the Vaccine Act.

## I.    Relevant Procedural History

After more than a year in "Pre-Assignment Review" while Petitioner gathered the necessary medical records, the parties engaged in settlement discussions. *See* ECF No. 29, 35-36. But those efforts were unsuccessful, and Respondent later filed his Rule 4(c) Report opposing entitlement on July 25, 2024. ECF No. 43. Respondent argues that Petitioner has failed to establish that her shoulder pain began within 48 hours of her vaccination, and that she suffered reduced range of motion. Rule 4(c) Report at 5-6. Petitioner then filed a Motion for Ruling on the Record ("Mot.") on October 16, 2024 and Respondent filed a response on December 2, 2024. ECF No. 45-46. The matter is now ripe for adjudication.

## II.    Relevant Facts

On October 19, 2020, Petitioner received a flu vaccine in her left arm at her primary care provider's ("PCP"). Ex. 4 at 1; Ex. 5 at 204. There is no evidence of pre-vaccination left shoulder dysfunction. Petitioner states she felt "pain and soreness" in her arm the day after the vaccination, which worsened to include loss of strength and limited range of motion. Ex. 1 at ¶7. She believed that "the pain would resolve with regular movement and the passage of time" and treated with home remedies. *Id*. at ¶8, 14.

Between November 13, 2020, and January 8, 2021, Petitioner returned to her PCP's office on four occasions for anticoagulation blood tests. *See* Ex. 5 at , 171, 178, 186, 193. Petitioner states that each of these visits was for a blood test done by a nurse and did not involve any contact with the doctor. Mot. at 5-6.

On January 11, 2021 (84 days after vaccination), Petitioner saw her PCP for an annual examination. Ex. 5 at 166. She now reported pain in her "left upper arm where she got the flu shot [on] 10/2020."[3] *Id*. On exam, she had no tenderness and full range of motion with discomfort on abduction. *Id*. at 168. No shoulder specific treatment was recommended.

Petitioner returned to her PCP on April 29, 2021, with complaints of pain in her "left arm and left shoulder area for the last 7 months." Ex. 5 at 121. She noted increased pain with movement, particularly extension. *Id*. On exam. She had full range of motion with

---

[3] Petitioner stated that her left shoulder pain "continued to worsen" and "would not relent," which prompted her to seek medical treatment. Ex. 1 at ¶9.

"some discomfort." *Id*. at 122. She was referred to an orthopedist and for x-rays. *Id*. An x-ray image obtained on May 4, 2021, revealed mild degenerative changes at the AC joint. Ex. 6 at 1-2.

On May 20, 2021, Petitioner saw an orthopedist with complaints of left shoulder pain since October. Ex. 3 at 12. She reported that "she had the flu vaccine [and] ever since that time has had pain." *Id*. The orthopedic exam revealed tenderness over the deltoid, full flexion and abduction, external rotation to 60 degrees, and positive impingement testing. *Id*. at 14. She was offered a cortisone injection, but declined and instead elected to pursue physical therapy treatment. *Id*.

Petitioner returned to her PCP on July 12, 2021 for a follow up visit. Ex. 5 at 91. Petitioner indicated that she was "planning on PT." *Id*. at 92, 93. No additional treatment records have been filed.

### III.    Applicable Law

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8; *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation

---

[4] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. Section 11(c)(1)(A)(B)(D)(E).

is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (*e.g.* tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time-frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

IV.    **Findings of Fact**

A.  *Onset*

Respondent maintains that Petitioner has not established Table onset because she "did not report shoulder pain until January 11, 2021, eighty-four days after vaccination," while continuing to seek treatment for other conditions in the interim. Resp. at 6-7. He highlights the fact that Petitioner "had at least four separate visits to Cleveland Clinic providers between November 13, 2020, and January 8, 2021, for anticoagulation treatment, during which there was no discussion of shoulder pain." *Id*. at 6.

Between her vaccination and her first appointment to address left shoulder pain, Petitioner had four visits at the anticoagulation clinic that monitored her blood thinning medications. *See* Ex. 3 at 170, 179, 196, 194. Although Respondent characterizes these visits as opportunities to seek treatment for shoulder pain, the records make clear that the visits were with a nurse, and were solely focused on the issue of Petitioner's anticoagulation treatment. *See id.* at 176-77, 183-84, 191-92, 199-200. The records do not contain any contact with a physician, have no comprehensive review of systems, and document no physical examination, instead focusing only on Petitioner's blood test results and changes to her medication. *See e.g. id.* at 189-192. Thus, it would be reasonable for Petitioner to have refrained from mentioning medical conditions or symptoms not related to her anticoagulation treatment during these appointments.

Further, although Petitioner waited almost three months to seek medical treatment for her shoulder pain, such a delay does not preclude a Table onset finding. An 84-day delay is not substantial when compared to other SIRVA petitioners. *See e.g. Winkle v. Sec'y of Health & Human Servs.,* No. 20-0485V, 2021 WL 2808993 (Fed. Cl. Spec. Mstr. 2021) (finding onset after a nearly five-month delay); *Welch v. Sec'y of Health & Human Servs.* No. 18-0660V, 2020 WL 7483129 (Fed. Cl. Spec. Mstr. 2020) (finding onset after more than three- and one-half-month delay).

Petitioner has also explained that, at first, she "believed the pain would resolve with regular movement and the passage of time" and that she "attempted to alleviate [her] pain with home remedies including over-the-counter medication, ice, heating pads, a tens unit, Epsom salts, positioning changes, and rest." Ex. 1 at ¶8, 14. She only sought medical treatment when her pain had worsened and "would not relent." *Id.* at ¶9. Further, when Petitioner started treatment, she consistently related to her pain to her flu vaccination and provide approximately timing (October 2020). To both her PCP and her orthopedist, Petitioner reported pain since receiving her flu shot. *See* Ex. 3 at 12; Ex. 5 at 166. While these records do not provide perfect evidence of onset, Petitioner provided additional detail in her affidavit, stating that she felt "pain and soreness" the day after her

6

vaccination, and loss of strength and range of motion within 48 hours. Ex. 1 at ¶7. Petitioner's affidavit testimony is not inconsistent with the medical records and thus, adds to the totality of evidence supporting onset. Notably, Respondent has not pointed to any evidence, other than delay, suggesting a longer onset.

Therefore, I find that Petitioner has preponderantly established that her pain likely began within 48 hours of her vaccination.

### B.  *Limited Range of Motion*

Respondent's next objection is that Petitioner cannot establish that she suffered limited range of motion. Resp. at 7. He bases his argument on the fact that Petitioner had normal range of motion exams during the first six months after her vaccination. *Id*. He notes that "the first visit to possibly support a limitation in ROM did not occur until over seven months after vaccination, on May 20, 2021." *Id*. at 8. Respondent argues that "Petitioner has not established that any of those measurements indicate a deficit, particularly for her demographic," and that Petitioner has not established that any limited range of motion was vaccine-related. *Id*.

The records of Petitioner's visits with her PCP on January 11, 2021, and April 29, 2021, indicate full range of motion in the left shoulder, albeit with movement-associated "discomfort." Ex. 5 at 122, 168. Neither record provides specific range of motion measurements. *Id.* However, when Petitioner saw an orthopedist on May 20, 2021, he noted "full flexion approximate 170 degrees, full abduction flexion 170 degrees. External [rotation] approximately 60 degrees. Internal rotation to L4." Ex. 3 at 14. Normal shoulder ROM for adults ranges from 165 to 180 degrees in flexion, 170 to 180 degrees in abduction, 90 to 100 degrees in external rotation, and 70 to 90 degrees in internal rotation. Cynthia C. Norkin and D. Joyce White, MEASUREMENT OF JOINT MOTION: A GUIDE TO GONIOMETRY 72, 80, 84, 88 (F. A. Davis Co., 5th ed. 2016). Thus, Petitioner's measured range of motion for external rotation at this time was decreased from what is normal for adults. And Respondent has not provided any evidence supporting a different normal range of motion for Petitioner's "demographic."

Respondent's argument that Petitioner cannot establish the third QAI for a Table SIRVA because her limited range of motion occurred more than six months after her vaccination likewise fails. Claimants are not required to show that limited range of motion occurred on any particular timeline, or even that limitations remain consistent over time. Here there is a documented medical record indicating that Petitioner had reduced range of motion on at least one occasion - sufficient to satisfy the requirement. *See* Ex. 3 at 14. And it is reasonable in this case to expect that an orthopedist, a specialist in the

7

musculoskeletal system, may have conducted a more precise examination of range of motion than did Petitioner's PCP. Further, although Respondent suggests that the limited range of motion in May 2021 may not have been vaccine-related, he points to no evidence in support of that argument and, notably, does not contest Petitioner's proof on the six-month severity requirement.

Therefore, I find that Petitioner has preponderantly established that she suffered from limited range of motion as required by the third QAI for a Table SIRVA. 42 C.F.R. § 100.3(c)(10)(iii); *See also Bolick v. Sec'y of Health & Human Servs.*, No. 20-0893, 2023 WL 8187307, at *7-8 (Fed. Cl. Spec. Mstr. Oct. 19, 2023) (establishing that the third QAI requirement "requires that a Petitioner demonstrate they suffered both pain and limited range of motion.").

## V.    Ruling on Entitlement

### A.  Requirements for Table SIRVA

I have found that Petitioner has preponderantly established that her pain began within 48 hours after her vaccination and that she experienced limited range of motion. 42 C.F.R. § 100.3(c)(10)(ii-iii). Respondent has not contested Petitioner's proof on the remaining elements of a Table SIRVA. *See* 42 C.F.R. § 100.3(c)(10)(i), (iv). Therefore, I find that Petitioner has provided preponderant evidence to establish that she suffered a Table SIRVA injury.

### B.  Additional Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received a flu vaccine in her left deltoid on October 19, 2020. Ex. 4 at 1; Ex. 5 at 204; Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, Petitioner has stated that she has not filed any civil action or received any compensation for her vaccine-related injury, and there is no evidence to the contrary. Ex. 1 at ¶19-20; Section 11(c)(1)(E) (lack of prior civil award). Finally, the records indicate that Petitioner has suffered the residual effects of her vaccine-related injury for more than six months and Respondent has not argued otherwise. *See e.g.,* Ex.

3 at 12; 5 at 91; Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

9